Filed 1/2/25  Perez v. Gomez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MARIO PEREZ,<br><br>　　　Plaintiff and Appellant,<br><br>　　v.<br><br>R. GOMEZ JR., et al.,<br><br>　　　Defendants and Respondents. | H051840<br>(Monterey County<br>　Super. Ct. No. 23CV001026) |

　　　　Plaintiff Mario Perez, an inmate representing himself,[1] appeals from a judgment of dismissal after the trial court sustained without leave to amend defendants R. Gomez Jr., Kathleen Allison, M. Boucher, R. Monroy, and L.A. Martinez's[2] joint demurrer to his complaint.

---

　　　　[1]  All of Perez's submissions to the trial court and to this court are handwritten and he uses all capital letters in those documents.  Wherever we quote from Perez's materials in this opinion, we have modified the formatting as necessary.

　　　　[2] Perez's complaint identifies the named defendants and their job titles with the California Department of Corrections and Rehabilitation (CDCR) as "R. Gomez[, Jr.] correctional officer, L.A. Martinez, warden …, R. Monroy, grievance coordinator, M. Boucher, associate warden, [and] Kathleen Allison, Secretary [CDCR]."  We refer to them collectively as "CDCR employees" in this opinion and, on our own motion, we further take judicial notice that the current Secretary of the CDCR is Jeff Macomber. (Evid. Code, § 452, subd. (h); see <https://www.cdcr.ca.gov/about-cdcr/secretary/> (as of Jan. 2, 2025)

On appeal, Perez seems to principally argue that the trial court abused its discretion by failing to grant him leave to amend his complaint. He also appears to claim that the trial court erred in finding that his complaint was barred for failing to timely file a claim under the Government Claims Act (Gov. Code, § 810 et seq.),[3] arguing that his causes of action did not accrue until he exhausted his administrative remedies. Finally, Perez argues, in general terms, that the trial court was biased against him as a non-native English speaker.

As discussed below, we disagree that the trial court erred in sustaining the demurrer to Perez's complaint due to his failure to comply with the Government Claims Act. As to the CDCR employees, the trial court properly sustained the demurrer without leave to amend as Perez has not shown that he can amend the complaint to avoid application of the Government Claims Act. We also disagree that the trial court demonstrated bias against Perez. Nevertheless, there is a reasonable probability that Perez can amend his pleading to pursue mandamus relief against the CDCR limited to the specific recovery of his property or the reasonable value thereof.

Accordingly, we will reverse the judgment and remand for further proceedings.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[4]

### A. Complaint

Perez filed his form complaint on April 5, 2023, listing causes of action for "general negligence," "theft," and "mental distress," naming the CDCR employees as defendants, along with Does 1 to 100. In the section of the form complaint addressing

---

[3] Unspecified statutory references are to the Government Code.

[4] "We derive our facts from those properly pleaded in the complaint and matters properly judicially noticed. [Citations.] We take as true properly pleaded material facts alleged in the pleadings, disregarding contentions, deductions, and conclusions of fact or law. [Citation.]" (*County of Santa Clara v. Superior Court* (2023) 87 Cal.App.5th 347, 355, fn. 2.)

2

compliance with "a claims statute," Perez indicated that he "has complied with applicable claims statutes." In his prayer for relief, Perez checked the boxes for compensatory and punitive damages of $1 million.

In support of his causes of action, Perez alleged that, on January 2, 2022, correctional officer R. Gomez, Jr., asked Perez and his cellmate to leave their cell so that it could be searched. Gomez took an electronic tablet that belonged to Perez and which was engraved with Perez's name and CDCR number, along with the purchase receipt. Perez requested that Gomez return his tablet several times "to no avail."[5] Perez filed an administrative appeal with prison staff but his appeal "was denied by defendants R. Monroy, L.A. Martinez, M. Boucher, [and] Kathleen Allison at each appeal level through exhaustion." Prior to filing his civil complaint, Perez "filed [a] Gov[ernment] Claim which was to be considered denied after no reply … was made."

Perez attached to his complaint a copy of a document entitled "Office of Appeals Decision" dated February 27, 2023, which addressed, as "Claim # 002," Perez's contention that prison staff "failed to return a confiscated tablet that belonged to you." The document indicates that Perez's claim was denied and that the decision "exhausts the administrative remedies available to the claimant within CDCR."

Perez also attached to his complaint a document entitled "State of California Government Claim" which he signed and dated on January 2, 2023. In that document, Perez stated that he was filing a claim against "L. Martinez, warden, M. Boucher, asst. warden[, and] officer R. Gomez" relating to an incident that occurred on "1-25-22 to present."[6] According to the claim form, Perez was seeking $1 million as "compensation

---

[5] In his cause of action for "mental distress," Perez alleged Gomez caused "unnecessary mental distress on 1-2-22 … by taking [Perez]'s … tablet" and refusing to return that property.

[6] As noted above, Perez alleged in his complaint that his tablet was taken during a search of his cell on January 2, 2022. In his opening brief, Perez states that, in the

3

for theft of tablet, mental distress" when "officer searched prison cell and took [authorized] property [], along with the unauthorized property." Perez further indicated that he had a receipt for the property.

### B. Demurrer

On May 19, 2023, the CDCR employees, represented by the Attorney General,[7] jointly demurred to Perez's complaint on the ground that the complaint failed to state facts sufficient to support the listed causes of action because Perez failed to timely comply with the claims presentation requirements of the Government Claims Act and he has "fail[ed] to articulate a valid exception that would excuse [that] non-compliance." The CDCR employees argued that Perez could not cure the defect and thus the demurrer should be sustained without leave to amend.

The record does not contain a copy of Perez's opposition to the CDCR employees' demurrer or a transcript from the hearing on the demurrer. By written order signed October 20, 2023, the trial court sustained the demurrer without leave to amend. In its order, the trial court stated, "Plaintiff asserted state law claims for theft and negligence based on allegations that the Defendants stole his tablet when it was confiscated during a cell search and that his administrative grievance about the confiscation was improperly denied. While Plaintiff filed a prison-administrative grievance, he failed to file a Government Claim within six months of the alleged theft. (Gov. Code, §§ 905.2, 910, 911.2, 945.4, 950–950.2.) The cause of action accrued on the date of the alleged theft and the time to file a Government Claim is not tolled while exhausting administrative remedies. The Defendants involved in Plaintiff's administrative grievance are also immune under Government Code section 820.2 (discretionary acts.) Accordingly, the

---

government claim form, he "listed the date of the incident as 1/25/22 to present, indicating the on-going efforts to resolve the issue and recover my tablet."

[7] The Attorney General is also representing the CDCR employees on appeal.

demurrer to Plaintiff's complaint against all Defendants is sustained without leave to amend."

The trial court entered judgment in favor of the CDCR employees on November 2, 2023.

Perez timely appealed.

## II. DISCUSSION

Perez's arguments are primarily directed at the trial court's decision to sustain the demurrer to his complaint without leave to amend and he also raises a vague claim that the trial court was biased against him. Specifically, his opening brief lists "Argument 1" as "[the trial court] abused [its] discretion to sustain defendant's [sic] demurrer without leave to amend." The heading for "Argument 2" reads "[the trial court] abused [its] judicial discretion to not allow an inartful pleading to be amended." Finally, Perez's "Argument 3" is identified as "[the trial court] showed favorable rulings to defendants which was prejudicial to plaintiff by overlooking the facts presented with supporting documents." However, Perez also challenges the trial court's finding that the complaint was barred by his failure to comply with the Government Claims Act because, in his view, his causes of action against the CDCR employees did not accrue until he exhausted his administrative remedies. As discussed below, we conclude that Perez's complaint against the CDCR employees is barred by his failure to timely submit a claim under the Government Claims Act. We also conclude that the trial court erred by sustaining the demurrer without leave to amend as there is a reasonable possibility Perez can amend his pleading to pursue mandate relief, against the CDCR only, for specific recovery of his property or, if the property has been disposed of or lost, its reasonable replacement value. Finally, we reject Perez's claims of judicial bias as they are not supported by the record nor does the conduct described, if it occurred, amount to a violation of Perez's due process rights.

5

### A. Applicable law and standard of review

The appellant has the burden of overcoming a presumption that the judgment is correct by affirmatively demonstrating prejudicial error. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564–566 (*Denham*).) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) These rules of appellate procedure apply to plaintiffs even though they elected to represent themselves on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247.) The law affords self-represented litigants " 'the same, but no greater consideration than other litigants and attorneys. [Citation.]' " (*Ibid.*)

"When reviewing a ruling on a demurrer, we examine de novo whether the complaint alleges facts sufficient to state a cause of action." (*Liapes v. Facebook* (2023) 95 Cal.App.5th 910, 919 (*Liapes*), citing *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558 (*Regents*).) " 'We assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.' [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.' " (*Liapes, supra*, at p. 919, quoting *Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 440.) Like the trial court, we are required to look past the pleading's label and examine its substance. (*Saunders v. Cariss* (1990) 224 Cal.App.3d 905, 908 (*Saunders*).) "Erroneous or confusing labels attached by the inept pleader are to be ignored if the complaint pleads facts which would entitle the plaintiff to relief." (*Ibid.*)

"We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' " (*Liapes, supra*, 95 Cal.App.5th at p. 919, quoting *Regents, supra*, 220 Cal.App.4th at p. 558.) "The plaintiff must demonstrate the court erroneously sustained the demurrer and

6

'must show the complaint alleges facts sufficient to establish every element of each cause of action.' " (*Liapes, supra*, at p. 919, quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)  The "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement [of the Government Claims Act] subjects a claim against a public entity to a demurrer for failure to state a cause of action." (*State of California v. Superior Court* (2004) 32 Cal.4th 1234, 1239 (*Bodde*).)

When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.  [Citations.]  The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

The Government Claims Act generally requires that claims for damages against a public entity be presented to the entity before the injured party files a lawsuit to recover those damages.  (Gov. Code, § 905.)  The purpose of that requirement is " 'to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation.' " (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 738.)

"Claims for personal injury and property damage must be presented within six months after accrual; all other claims must be presented within a year.  (§ 911.2.)" (*DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 990.)  "[F]ailure to timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit against that entity." (*Bodde, supra,* 32 Cal.4th at p. 1239.)  Further, the failure to allege facts "demonstrating or excusing compliance with the claim presentation requirement [of the Government Claims Act] subjects a claim against a public entity to a demurrer for failure to state a cause of action." (*Ibid*, fn. omitted.)  "[W]hen a cause of action falls within the scope of the Government Claims Act, submission of a claim is a

7

condition precedent to maintaining a tort action and compliance is treated as an essential element of the cause of action that must be pleaded. [Citation.]" (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1021–1022, citing *Bodde*, *supra*, 32 Cal.4th at pp. 1239–1240.)

The claim presentation requirement applies to a lawsuit against an employee of a public entity as well, so long as the lawsuit is based on conduct within the course and scope of employment. (§ 950.2.) To state a cause of action for damages against a public employee for acts within the course and scope of their employment, the plaintiff must allege facts in the complaint demonstrating compliance with the claim presentation requirement. (*Bodde, supra*, 32 Cal.4th at p. 1239.) " 'Ordinarily, the determination whether an employee has acted within the scope of employment presents a question of fact; it becomes a question of law, however, when "the facts are undisputed and no conflicting inferences are possible." ' [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 299.)

### B. Analysis[8]

#### 1. The trial court did not err in sustaining the CDCR employees' demurrer to the complaint

We first examine whether the trial court erred in sustaining the CDCR employees' demurrer to the complaint. Based on the allegations set forth in the pleading, we find no such error since Perez failed to set forth facts sufficient to state a cause of action for

---

[8] The CDCR employees do not dispute that Perez appropriately exhausted his administrative remedies internal to CDCR but argue that this process did not extend the time in which he was required to present a claim under the Government Claims Act. We agree that case law is clear that the "obligation to exhaust the administrative remedies available to prisoners … is independent of the obligation to comply with the Government Claims Act." (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1382.) We thus examine only whether Perez was required to present a claim under the Government Claims Act within six months after the accrual of the cause of action. (§ 911.2, subd. (a).)

8

negligence, "theft," or mental distress, principally because Perez did not allege facts demonstrating his timely compliance with the Government Claims Act or any excuse for noncompliance with those statutes.[9]

The substance of Perez's complaint is set forth in his allegations and prayer for relief. Perez alleged that: (1) during a search of his cell on January 2, 2022, prison officials seized his personal property, which was engraved with his name and listed on his "property card record"; (2) that property is lawfully owned by him; and (3) prison officials have unlawfully detained the property and have not returned it to Perez. Although Perez checked the box on the form complaint indicating that he "complied with applicable claims statutes," the claim form attached as an exhibit to his complaint was signed and filed on January 2, 2023, one year *after* his property was taken. Perez did not allege facts to show any excuse for not presenting his claim within six months as required. (*Bodde, supra*, 32 Cal.4th at p. 1239.) Perez's prayer for relief requested compensatory and punitive damages as well as his costs.

Perez's complaint in which he seeks "money or damages" for the alleged wrongful retention of his property and ensuing mental distress, whether sounding in negligence or an intentional tort, is barred by his failure to timely submit a claim under the Government Claims Act. (*Bodde, supra*, 32 Cal.4th at p. 1239.) Perez does not allege any excuse for his failure to comply with the Government Claims Act, other than his erroneous belief that his causes of action did not accrue until he exhausted his administrative remedies. Accordingly, the trial court did not err in sustaining the CDCR employees' demurrer to the complaint.

---

[9] Section 905 lists the claims that are exempt from the claim presentation requirement. None of these exceptions apply here.

9

### 1. Leave to amend

"A plaintiff against whom a demurrer is sustained is entitled to leave to amend the defective complaint if [they] can 'prov[e] a reasonable possibility that the defect can be cured by amendment.' [Citations.] The onus is on the plaintiff to articulate the 'specifi[c] ways' to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend 'only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case.' [Citation.]" (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145.)

### a. Perez cannot state a claim against the CDCR employees

As to the CDCR employees, the law is clear that Perez's claims against them are based on conduct undertaken in the course and scope of their employment with the CDCR. Perez alleged that the CDCR employees took his personal property from his cell and, through the administrative appeals process, denied his requests to return it. Perez does not allege that any CDCR employee acted outside their scope of employment at any time in this process. Thus, Perez's claims against the CDCR employees is subject to the claim presentation requirement and his failure to timely file a claim precludes him from maintaining a lawsuit against them. (§ 950.2.) The trial court therefore did not abuse its discretion in sustaining the demurrer without leave to amend, as to the CDCR employees.

### b. Perez can potentially state a claim in mandamus against the CDCR

We now examine whether there is a reasonable possibility that Perez can amend his pleading to present a claim for relief that is not subject to the Government Claims Act. We conclude there is, as Perez alleges that his personal property was taken and wrongfully withheld from him by the CDCR and, in his opening brief, he states that he "only wishes to recover his personal property."

10

The law is clear that "[a] claim for the specific recovery of property has never been considered a claim for 'money or damages' as used in section 905 and its predecessors." (*Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 121 (*Minsky*).)

In *Minsky*, *supra*, 11 Cal.3d 113, at the time of plaintiff's arrest, certain property was taken from him and "wrongfully withheld following the disposition of criminal charges." (*Id.* at pp. 116–117.) The California Supreme Court expressly held that "plaintiff's failure to comply with [the Government Claims Act] erects no bar to a cause of action for the return of the property so seized and retained." (*Minsky*, at p. 117.) The court explained that "the language of [Government Code] section 905 makes clear that the requirements for presentation of claims apply only to 'claims for money or damages' and not to claims for other forms of relief, such as specific recovery of property taken by the city as a bailee." (*Minsky*, *supra*, at p. 117.) "The claims statutes do not 'impose any … requirements for nonpecuniary actions, such as those seeking injunctive, *specific*, or declaratory relief.' [Citation.]" (*Id.* at p. 121, fns. omitted.)

The Court also opined that the claim for relief would not be barred by the Government Claims Act even if the property at issue "is no longer traceable to any property presently in defendant's possession and thus is not strictly available for specific recovery …." (*Minsky*, *supra*, 11 Cal.3d at pp. 121–122, fn. 14.) This is to avoid the inequitable situation where a government entity, knowing it is not shielded by the Government Claims Act from a suit to recover wrongfully withheld property, "takes the further wrongful step of disposing of the bailed property," in order to then assert the claims statute because the plaintiff's claim is necessarily one for "money or damages" under section 905. (*Minsky*, *supra*, 11 Cal.3d at pp. 121–122, fn. 14.).

Finally, *Minsky* concluded that a plaintiff's failure to expressly seek specific recovery of property in the complaint does not preclude that theory of recovery if the

11

facts alleged therein are sufficient to support a claim for specific recovery. (*Minsky*, *supra*, 11 Cal.3d at pp. 121–122.)

Likewise, in *Holt v. Kelly* (1978) 20 Cal.3d 560 (*Holt*), the Supreme Court again held that an action for specific recovery brought by a person whose property was taken at the time of his arrest "is exempt from the claim filing provisions of the Government Code, even though some or all of the property may have been dissipated and respondent may be compelled to respond in damages in lieu of property." (*Id*. at p. 565, fn. omitted.) The Court indicated that the appropriate mechanism for compelling a government entity to return wrongfully withheld property is by way of a petition for writ of mandate. (*Id*. at p. 564.) "We have heretofore held that mandamus may be brought to start the chain of action designed to compel a ministerial duty by a public officer, even if the ultimate goal may be recovery of a sum of money. [Citations.] It is also clear that mandamus will lie where the recovery of money is merely ancillary to an underlying proceeding which seeks performance of a ministerial duty. [Citations.]" (*Id*. at p. 565, fn. 5.)

Perez is in a similar position to the litigants in *Minsky* and *Holt*, and we therefore conclude that there is a reasonable possibility that he can amend his pleading to state a claim in mandamus for the specific recovery of his personal property or its value. *Minsky* and *Holt* held that the aggrieved parties in those cases were not required to file a claim under the Government Claims Act, and, in *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498 (*Escamilla*), that rationale was extended to an inmate seeking to recover non-contraband personal property that prison officials had taken and failed to return. (*Escamilla*, *supra*, at p. 513.)[10]

---

[10] The court in *Escamilla* also briefly discussed the public policy aims behind the Government Claims Act notice requirements, observing that an inmate's efforts to exhaust their administrative remedies through the inmate appeals process would give the CDCR "prompt notice of [the inmate's] claim prior to [their] filing of the instant petition, [thus] g[iving] it an opportunity to conduct an early investigation of [the] claim and

A petition for writ of mandamus for the specific recovery of property is not a "claim[] for money or damages" pursuant to section 905.2. "A defendant in a criminal proceeding clearly has the right to obtain mandamus to compel the return of personal property wrongfully withheld by the custodial officers. [Citations.] Mandamus lies in the criminal proceeding even after disposition of the criminal charges. [Citation.] No court has intimated or held that the claims statute applies to the arrestee directly seeking mandamus in a criminal proceeding to compel the return of property wrongfully in the possession of custodial officers." (*Minsky*, *supra*, 11 Cal.3d at p. 123.) "Since respondent is under a duty to return the claimed property to petitioner [citation], a writ of mandate is appropriate to compel its return. [Citation.]" (*Holt*, *supra*, 20 Cal.3d at p. 564.)

Here, Perez alleged that the CDCR employees, as agents of the CDCR,[11] took his personal property and failed to return it to him. The CDCR was effectively a bailee of Perez's personal property and therefore a petition for writ of mandamus is the appropriate vehicle for Perez to seek the recovery of his property from the CDCR or, if the property has been disposed of or lost, its replacement value. (*Minsky, supra*, 11 Cal.3d at p. 123; *Holt*, *supra*, 20 Cal.3d at pp. 564, 565, fn. 5.)

As noted above, we are obligated to look past the labels attached to the pleading and instead examine its substance. (*Saunders*, *supra*, 224 Cal.App.3d at p. 908.) Perez has indicated in his brief that he seeks the return of his personal property and the facts alleged are sufficient to support a petition for mandamus relief. (*Minsky, supra*, 11 Cal.3d at pp. 121–122; *Liapes*, *supra*, Cal.App.5th at p. 919.)

attempt to settle that claim and avoid similarly caused future injuries or liabilities." (*Escamilla*, *supra*, 141 Cal.App.4th 498 at p. 513.)

[11] We reiterate that the CDCR employees are not appropriate parties to a mandamus proceeding, and recovery may be had *only* from the CDCR, in its capacity as custodian, assuming Perez can prove the allegations.

## C. Judicial bias

Finally, Perez argues that the trial judge demonstrated bias toward him during the demurrer proceedings. Preliminarily, it is unclear whether Perez has preserved his judicial bias claim, because we have no record of the oral proceedings to disclose whether Perez objected to the alleged improprieties on which the claim is based. (See *Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1218 [appellants "did not preserve their claim of judicial bias for review because they did not object to the alleged improprieties and never asked the judge to correct remarks made or recuse himself"].)

Even if preserved, Perez's argument fails on the merits. Arguments for reversal based on judicial bias generally are grounded in the due process clause, "which sets an exceptionally stringent standard." (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 (*Schmidt*).) "It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation. [Citation.] The appellate court's role is not to examine whether the trial judge's behavior left something to be desired, or whether some comments would have been better left unsaid, but to determine whether the judge's behavior was so prejudicial it denied the party a fair, as opposed to a perfect, trial." (*Ibid.*)

Perez contends that the trial judge demonstrated judicial bias when she "discounted [his] contentions" regarding his need, as a non-English speaker, for the electronic tablet and its Spanish/English dictionary program, and "showed bias towards a non-native [E]nglish speaker's need for such a device." He also contends that the trial judge "purposefully ignored [] facts in his pleadings as they applied to the causes of action."

It is Perez's burden to provide an adequate record on appeal and to affirmatively show error. (See *Denham, supra*, 2 Cal.3d at p. 564.) Because Perez has provided us

14

with neither a transcript nor a settled statement of the hearing on the demurrer, our review is limited to determining whether any error "appears on the face of the record."  (*National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 521; *Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)  With no more than the minute order and the subsequent written order to memorialize the proceedings, we can see no evidence of judicial bias, let alone judicial bias rising to the level of a due process violation.

Finally, even imputing to the trial judge the comments Perez reports, our conclusion would remain unchanged.  We cannot say that the trial judge's claimed skepticism regarding Perez's need for his personal property was so prejudicial that it denied Perez a fair, as opposed to a perfect, hearing.  (*Schmidt, supra*, 44 Cal.App.5th at p. 589.)

## III.    DISPOSITION

The judgment of dismissal is reversed and the matter is remanded with directions to the trial court to vacate its order sustaining the demurrer without leave to amend.  The trial court shall enter a new order sustaining the demurrer without leave to amend as to the CDCR employees, but granting leave to amend to state a claim in mandamus for the specific recovery of property as to Jeff Macomber, in his capacity as Secretary of the California Department of Corrections and Rehabilitation, as the sole respondent.  In the interests of justice, the parties shall bear their own costs on appeal.

15

_____
WILSON, J.

WE CONCUR:

_____
BAMATTRE-MANOUKIAN, ACTING P. J.

_____
DANNER, J.

*Perez v. Gomez Jr., et al.*
H051840